# EXHIBIT "1"

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC

17 January 2025

Mark Zaid
Mark S. Zaid, P.C.
1250 Connecticut Ave., N.W., Suite 700
Washington, DC  20036

Reference: ODNI Case No. DF-2025-00173

Mr. Zaid:

This letter responds to your Freedom of Information Act (FOIA) request received on 10 January 2025 by the Office of the Director of National Intelligence (ODNI), requesting *"…the full version of the updated Intelligence Community Assessment on Anomalous Health Incidents ('AHI')…."*

This request was processed under the FOIA, 5 U.S.C. § 552, as amended.  ODNI located one document responsive to this request. During the review process, we considered the foreseeable harm standard and determined that certain information must be withheld pursuant to the following FOIA exemptions:

- (b)(1), which applies to information that is currently and properly classified pursuant to Executive Order 13526, Section 1.4(c).
- (b)(3), which applies to information exempt from disclosure by statute. The relevant statute is the National Security Act of 1947, as amended, Section 102A(i)(I), 50 U.S.C. § 3024(i)(1), which protects information pertaining to intelligence sources and methods.

If you are not satisfied with this response, a number of options are available. You may contact me, the FOIA Public Liaison, at ODNI_FOIA_Liaison@odni.gov, or the ODNI Requester Service Center, at ODNI_FOIA@odni.gov or (703)-275-1313. You may also submit an administrative appeal to the Chief FOIA Officer, c/o Chief, Information Management Office, Office of the Director of National Intelligence, Washington, DC 20511 or emailed to ODNI_FOIA@odni.gov.  The appeal correspondence should be clearly marked "Freedom of Information Act Appeal of Adverse Determination" and must be postmarked or electronically transmitted within 90 days of the date of this letter.

Lastly, the Office of Government Information Services (OGIS) of the National Archives and Records Administration is available with mediation services and can be reached by mail at 8601 Adelphi Road, Room 2510, College Park, MD 20740-6001; telephone (202) 741-5770; toll-free (877) 684-6448; or email at ogis@nara.gov.

Sincerely,

Erin Morrison
Chief, Information Review and Release Group
Information Management Office

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)



# NATIONAL INTELLIGENCE COUNCIL



## INTELLIGENCE COMMUNITY ASSESSMENT

| | |
|---|---|
| 10 January 2025 | ICA 2025-00008-A |

(b)(3) **Updated Assessment of Anomalous Health Incidents, as of December 2024**

(U) *This Intelligence Community Assessment was prepared under the auspices of the National Intelligence Officer (NIO) for Counterintelligence. It was drafted by the National Intelligence Council with contributions* (b)(3)

(b)(1), (b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)



(b)(3) **Updated Assessment of Anomalous Health Incidents, as of December 2024**

10 January 2025                                                    ICA 2025-00008-A

## (U) Executive Summary

(b)(3) *Scope Note: This IC-drafted and coordinated Intelligence Community Assessment (ICA) addresses the IC's evaluation of new information possibly related to anomalous health incidents (AHIs) since the publication of the ICA (U//FOUO) Updated Assessment of Anomalous Health Incidents, ICA 2023-02286, on 1 March 2023.*

(b)(3) In line with the 2023 Intelligence Community Assessment (ICA), most of the IC continues to assess that it is "very unlikely" a foreign adversary is responsible for the events reported as possible anomalous health incidents (AHIs). IC components base this overall judgment on updates to the three lines of inquiry identified in the 2023 ICA: (1) whether collection either indicates a foreign actor was seeking to target US Government (USG) personnel who reported events as possible AHIs or links a foreign actor to events reported as possible AHIs; (2) the feasibility and existence of a deliberate causal mechanism, such as a pulsed RF energy weapon or prototype device, that could cause the types of symptoms and sensory phenomena reported as possible AHIs; and (3) the state and reliability of medical analysis on whether at least some of the USG personnel reporting AHIs had a common set of physical injuries.

- (b)(3) In judging that it is "very unlikely" that a foreign actor is responsible, (b)(1), (b)(3) place emphasis on sensitive intelligence reporting continuing to point away from foreign involvement in AHIs, the IC's investigations of key incidents reported as possible AHIs, and a review of foreign intelligence and research regarding the development of novel weapons. (b)(1), (b)(3) still have moderate-to-high confidence in this judgment, and (b)(1), (b)(3) still have moderate confidence. These components also judge it is "very unlikely" a foreign actor has used a novel weapon or prototype device to harm even a subset of the USG personnel or dependents who reported medical symptoms or sensory phenomena as AHIs.

- (b)(3) In contrast, (b)(1), (b)(3) judges there is a "roughly even chance" a foreign actor has used a novel weapon or prototype device to harm a small, undetermined subset of the USG personnel or dependents who reported medical symptoms or sensory phenomena as AHIs (b)(1) (b)(3) judges there is a "roughly even chance" a foreign actor has developed a novel weapon or prototype device that could have harmed a small, undetermined subset of the USG personnel or dependents who reported medical symptoms or sensory phenomena as AHIs. However (b)(1), (b)(3) ontinues to assess it is unlikely a foreign actor has deployed such a weapon in any events reported as possible AHIs. (b)(1), (b)(3) have low confidence in these judgments. These shifts are based on reporting they evaluate to indicate that foreign actors are making progress in scientific research and weapons development.

(b)(3) In support of this updated assessment, IC components each revisited the three lines of inquiry they considered in 2023, identifying judgments and confidence levels about each. All IC components agree that most of the new intelligence was consistent with the judgments reached in the 2023 ICA, but new reporting led two components to shift their assessments about whether a foreign actor has a capability that could cause biological effects consistent with some of the symptoms reported as possible AHIs. This shift consequently led (b)(1), (b)(3) to subtly change their overall judgment about whether a foreign actor might have played a role in a small number of events.

[ i ]

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173



- **(b)(3)** **Foreign Actors.** IC components continue to assess that it is either "very unlikely" or "unlikely" that any foreign actor caused any of the events reported as possible AHIs because intelligence reporting points away from key US adversaries' involvement, and IC targeting, collection, and investigations have not linked any foreign actor to any reported incident. (b)(1), (b)(3) **(b)(1), (b)(3)** assess it is "very unlikely," and **(b)(1), (b)(3)** judges that it is "unlikely." **(b)(1), (b)(3)** abstains. In reaffirming their judgments from 2023, IC components note that details from events newly reported as possible AHIs and intelligence reporting the IC has collected since March 2023 point away from foreign actors being responsible. This intelligence picture is consistent with the body of information considered in the last ICA published in 2023, and all IC components agree that years of IC collection, targeting, and analytic efforts have not surfaced compelling intelligence reporting that ties a foreign actor to any specific event reported as a possible AHI.

- **(b)(3)** **Foreign Actor Capability.** (b)(1), (b)(3) continue to assess it is "very unlikely" a foreign actor has a capability, such as a pulsed RF energy weapon or prototype device, to cause the symptoms and sensory phenomena associated with events reported as possible AHIs. (b)(1), (b)(3) have changed their judgments since 2023 based on new reporting that they evaluate to indicate that foreign directed-energy research programs (b)(1), (b)(3) have been making progress. (b)(1), (b)(3) assesses it is "likely" a foreign actor has an RF antipersonnel capability and that this capability can cause biological effects consistent with some of the symptoms reported as possible AHIs. (b)(1), (b)(3) assesses there is a "roughly even chance" that a foreign actor has a capability that could have caused some of the experiences reported as possible AHIs. For all IC components, this supporting judgment takes into account two factors: foreign adversary research and development of novel weapons, especially those using RF energy; and the scientific possibility of that research being able to harm humans in ways consistent with the symptoms and sensations reported as possible AHIs.

- **(b)(3)** **Medical Research.** The IC continues to assess that medical research indicates US personnel and dependents reporting possible AHIs do not have a consistent set of physical injuries, based on research published in 2024 from the National Institutes of Health (NIH) that reaffirms prior medical analysis. (b)(1), (b)(3) abstains.

(b)(3) No IC component calls into question the experiences or suffering of USG personnel and dependents. All components recognize that USG personnel and dependents experienced genuine, sometimes painful and traumatic, physical symptoms and sensory phenomena and honestly and sincerely reported those events as possible AHIs.

(b)(3) All IC components continue to acknowledge that it cannot rule out the possibility that a small number of events reported as possible AHIs were caused by a foreign actor because the IC could not examine every location where an AHI was reported. Consistent with their judgments in 2023, (b)(1), (b)(3) assess such a scenario would be most likely if a foreign actor used a mechanism based on well-established scientific principles designed for harassment, such as an acoustic device or an incapacitating but nonlethal chemical agent, rather than a novel weapon.

(b)(3) The IC will continue to collect and analyze information that might reveal a foreign effort to harm USG personnel and their dependents and will update its findings as appropriate. The IC will focus on collecting on foreign actor weapons programs; investigating health incidents with a counterintelligence (CI) nexus; providing intelligence support to USG-affiliated labs conducting biological effects research; monitoring USG lab findings on potential causal mechanisms; and examining any additional medical studies. The IC is supporting USG-affiliated lab research on whether RF signals can cause bioeffects consistent with those reported as possible AHIs. The majority of results have historically shown no harmful bioeffects; however more recent, limited studies have produced mixed preliminary results. In support of the IC's efforts to produce this assessment, the Department of Defense (DOD) organized a workshop during which USG-affiliated scientists briefed their ongoing and completed research, but deferred to the IC



Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

on what research to address in this product. The IC chose to only evaluate published findings in this ICA and will incorporate additional research into its assessments when the labs have completed testing and published results.

(b)(3) As the IC did in 2023, the IC identified scenarios on how our analysis could be wrong. The IC collaborated with analysts with no prior experience working this topic to identify four possible scenarios: (1) a covert intelligence activity evading detection; (2) a scientific breakthrough that circumvents Western scientific and ethical standards; (3) critical medical symptoms relevant for the IC to evaluate were hidden amid more common symptoms; and (4) early, naturally-caused incidents inspired an adversary to develop a harassment device as part of a deception campaign.

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3) ████████████████████████████

## (U) Scope Note

(b)(3) This IC-coordinated Intelligence Community Assessment (ICA) addresses the IC's evaluation of new information possibly related to anomalous health incidents (AHIs) since the publication of the ICA *(U//FOUO) Updated Assessment of Anomalous Health Incidents*, ICA 2023-02286, on 1 March 2023. (b)(1), (b)(3) ████████

███████████████████████████████████████

████████████████████████████

(b)(1), (b)(3)



## (U) Key Gaps

(b)(1), (b)(3)

(b)(3) ████████████████████████████

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

(b)(1), (b)(3)

## (U) Key Assumptions

(b)(1), (b)(3)

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

(b)(1), (b)(3)



[ vi ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)



(b)(1), (b)(3)

10 January 2025                                                                ICA 2025-00008-A

(b)(1), (b)(3)

[1]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ‖‖‖‖‖‖‖‖    **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

(b)(1), (b)(3)

[2]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ‖‖‖‖‖‖‖‖‖‖    **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[3]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ||||||||||    **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)



[4]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC**                                    **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

(b)(1), (b)(3)

[ 5 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

NIC █████████    NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)



[6]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ||||||||||||   NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[7]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173



(b)(3)

**NIC** ||||||||||    NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

(b)(1), (b)(3)

[8]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173



**NIC**    (b)(3)    **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[9]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** | **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[ 10 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

**NIC** (b)(3) **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[ 4 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC**    NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[ 12 ]

(b)(3)

NATIONAL INTELLIGENCE COUNCIL

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC**  **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[ 13 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ||||||||||    NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)



[ 14 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ||||||||||  NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[ 15 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC**  ‖‖‖‖‖‖‖‖‖   **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

(b)(1), (b)(3)

[ 16 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** |||||||||||     NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[ 17 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

NIC ||||||||||    NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[ 18 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** ||||||||||||   **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[ 19 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** | **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[ 20 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

NIC (b)(3) NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[ 21 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** |||||||||||      NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)



[ 22 ]

(b)(3)

**NIC** |||||||||||      NATIONAL INTELLIGENCE COUNCIL

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

**NIC** ‖‖‖‖‖‖‖ (b)(3)    **NATIONAL INTELLIGENCE COUNCIL**

(b)(1), (b)(3)

[ 23 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

NIC

NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)

[24]

(b)(3)

NATIONAL INTELLIGENCE COUNCIL

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

**NIC** NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)



(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)

NIC | NATIONAL INTELLIGENCE COUNCIL

(b)(1), (b)(3)



[ 26 ]

(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3) ████████████████████████████

## (U) Estimative Language

(U) Estimative language consists of two elements: judgment about the likelihood of developments or events occurring and levels of confidence in the sources and analytic reasoning supporting the judgments. Judgments are not intended to imply that we have proof that shows something to be a fact. Assessments are based on collected information, which is often incomplete or fragmentary, as well as logic, argumentation, and precedents.

### (U) Judgments of Likelihood

(U) The chart below approximates how judgments of likelihood correlate with percentages. Unless otherwise stated, the Intelligence Community's judgments are not derived via statistical analysis. Phrases such as "we judge" and "we assess"—and terms such as "probable" and "likely"—convey analytical assessments.



### (U) Confidence in our Judgments

(U) Confidence levels provide assessments of timeliness, consistency, and extent of intelligence and open source reporting that supports judgments. They also take into account the analytic argumentation, the depth of relevant expertise, the degree to which assumptions underlie analysis, and the scope of information gaps.

### (U) We ascribe high, moderate, or low confidence to assessments:

- (U) **High confidence** generally indicates that judgments are based on sound analytic argumentation and high-quality consistent reporting from multiple sources, including clandestinely obtained documents; clandestine and open source reporting; and in-depth expertise. It also indicates we have low intelligence gaps; have few assumptions underlying the analytic line; have found potential for deception to be low; and we have examined long-standing analytic judgments held by the IC and considered alternatives. For most intelligence topics, it will not be appropriate to claim high confidence for judgments that forecast out a number of years. High confidence in a judgment does not imply that the assessment is a fact or a certainty; such judgments might be wrong even though we have a higher degree of certainty that they are accurate.

- (U) **Moderate confidence** generally means that the information is credibly sourced and plausible but not of sufficient quality or corroborated sufficiently to warrant a higher level of confidence. There may, for example, be information that cuts in a different direction. We have in-depth expertise on the topic, but we may acknowledge assumptions that underlie our analysis and some information gaps; there may be minor analytic differences within the IC, as well as moderate potential for deception.

- (U) **Low confidence** generally means that the information's credibility and/or plausibility is uncertain, that the information is fragmented, dated, or poorly corroborated, or that reliability of the sources is questionable. There may be analytic differences within the IC, several significant information gaps, high potential for deception or numerous assumptions that must be made to draw analytic conclusions. In the case of low confidence, we are forced to use current data to project out in time, making a higher level of confidence impossible.

UNCLASSIFIED

NIC • 1802-00214

(b)(3) ████████████████████████████

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173

(b)(3)



(b)(3)

Approved for released by ODNI on 01-17-2025, FOIA Case #DF-2025-00173